UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Evan Rosenberg and Shira Rosenberg, | Case No. 22-cv-0691 (WMW/JFD) |
| Plaintiffs, | |
| v. | **ORDER** |
| Homesite Insurance Agency, Inc., | |
| Defendant. | |

---

This matter is before the Court on Defendant Homesite Insurance Agency, Inc.'s (Homesite) motion for judgment on the pleadings. (Dkt. 26.) Plaintiffs Evan and Shira Rosenberg (collectively, the Rosenbergs) oppose the motion. For the reasons addressed below, Homesite's motion is granted and the matter is dismissed with prejudice.

## BACKGROUND

Plaintiffs Evan and Shira Rosenberg are a married couple living in Minneapolis, Minnesota. Homesite is a Massachusetts corporation with an active corporate registration in Minnesota. The Rosenbergs entered into a homeowners insurance policy (the Policy) with Homesite in 2020. As is relevant to this case, the Policy covers personal property that is "owned or used by an 'insured' while [the personal property] is anywhere in the world," to a maximum amount of $359,500. The Policy "insure[s] for direct physical loss to [personal property] caused by . . .

      9. Theft

           a.  This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

The Policy does not define personal property, but the Policy does describe categories of property that are either subject to lower "special limits of liability" or excluded from any coverage.  Among the Policy's special limits of liability are the following: a $200 coverage limit "on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards;" a $1,500 coverage limit "on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps.  This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists."  The Policy excludes from coverage "'business' data, including such data stored in: (1) books of account, drawings or other paper records; or (2) computers and related equipment."  The Policy also excludes from coverage "credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds," except that the Policy "will pay up to $500 for . . . loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an 'insured's' name . . . ."

In June 2021, hackers compromised the Rosenbergs' computer and accessed the Rosenbergs' crypto wallets located on two separate blockchain networks.  The hackers transferred crypto tokens from the Rosenbergs' crypto wallets into a separate crypto wallet

2

that was inaccessible to the Rosenbergs. The Rosenbergs state that the value of the crypto tokens was approximately $750,000. The Rosenbergs reported the event to the Federal Bureau of Investigation Internet Crime Complaint Center and filed an insurance claim on the Policy with Homesite.

The Rosenbergs and Homesite communicated regarding the Policy claim during the two-week period following the filing of the claim. As part of this communication, the Rosenbergs provided Homesite with documents, including a case from the Court of Common Pleas, Franklin County, Ohio, and Notice 2014-21 from the Internal Revenue Service. Homesite paid the Rosenbergs' claim subject to the Policy's $200 special limit of liability for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards. The Rosenbergs commenced this action on March 15, 2022. The Rosenbergs' amended complaint asserts two claims against Homesite: breach of contract (Count One) and unreasonable denial of coverage in violation of Minnesota Statute § 604.18 (Count Two). Homesite filed the pending motion for judgment on the pleadings on November 9, 2022.

## ANALYSIS

Homesite moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). A federal court sitting in diversity jurisdiction must apply the substantive law of the forum state. *Winthrop Res. Corp. v. Stanley Works*, 259 F.3d 901, 904 (8th Cir. 2001). But federal courts apply federal pleading standards to state substantive law to determine whether a complaint makes out a claim under state law. *Karnatcheva v.*

*JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013).  Although matters outside the pleadings generally may not be considered when deciding a motion to dismiss, a district court may consider documents necessarily embraced by the pleadings.  *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).  Materials are necessarily embraced by the pleadings when a complaint alleges the contents of the materials and no party questions their authenticity.  *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).  For instance, the contract on which a breach-of-contract claim rests ordinarily is embraced by the pleadings. S*ee Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014).

Courts analyze a motion for judgment on the pleadings using the same standard under which courts address a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  Under that standard, a district court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  The factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A plaintiff may rely on a "reasonable expectation that discovery will reveal evidence" of the alleged activity.  *Id.* at 556.  But a plaintiff must do more than offer "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.  A district court may consider exhibits attached to the complaint and documents that are necessarily embraced by the complaint without

4

converting the motion into one for summary judgment. *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

## I.

Homesite argues that the Rosenbergs' breach-of-contract claim fails because the theft of the crypto tokens is not a "direct physical loss" under the Policy. In Homesite's view, crypto tokens "exist exclusively in a virtual form" and therefore fall outside the Policy's coverage. The Rosenbergs contend that the Policy's language is ambiguous and the ambiguity must be resolved in their favor. The Rosenbergs claim that the Policy covers some categories of intangible data, despite the apparent exclusion of such coverage. Homesite responds that the provisions highlighted by the Rosenbergs do not create ambiguity because the provisions cover property that "can have some minimum physicality susceptible to 'direct physical loss.'"

"Interpretation of an insurance policy is a matter of state law." *Stan Koch & Sons Trucking, Inc. v. Great W. Cas. Co.*, 517 F.3d 1032, 1039 (8th Cir. 2008). Federal courts apply the law of the forum state when neither party has raised a choice-of-law claim. *Progressive Northern Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) (citing *BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n. 3 (8th Cir. 2003)). Here, neither party raises a choice-of-law claim. The Court, therefore, applies Minnesota law to this case.

"Under Minnesota law, a breach-of-contract claim has four elements: (1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Nelson v. Am. Fam. Mut. Ins. Co.*, 899

F.3d 475, 480 (8th Cir. 2018). The question before the Court is whether Homesite breached the terms of the Policy. The other elements are not in dispute.

Minnesota law employs "general principles of contract interpretation" to determine the meaning of insurance policies. *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008) (citing *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998)). "Interpretation of an insurance policy and application of the policy to the facts in a case are questions of law . . . ." *Am. Fam. Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001) (citing *Franklin v. Western Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406 (Minn. 1998)). Terms that are defined or otherwise unambiguous are given their ordinary meaning. *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 880 (Minn. 2002). Ambiguous terms are construed against the insurer and in accord with the expectations of the insured. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006) (citations omitted). A policy's terms are ambiguous if its terms are reasonably susceptible to more than one interpretation. *Gen. Cas. Co. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 575 (Minn. 2009). Courts must read the policy as a whole to determine whether a term truly is ambiguous. *Ritrama, Inc. v. HDI-Gerlin Am. Ins. Co.*, 796 F.3d 963, 969 (8th Cir. 2015). The insured party has the burden of proving coverage under the policy. *UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, 47 F.Supp.3d 863, 873 (D. Minn. 2014); *Eng'g & Constr. Innovs., Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013).

Under Minnesota law, "direct physical loss" requires a "distinct, demonstrable, and physical alteration" to the covered property. *Cedar Bluff Townhome Condo. Ass'n, Inc.*

*v. Am. Fam. Mut. Ins.*, 857 N.W.2d 290, 295 (Minn. 2014). No matter what factual scenario is at issue, Minnesota law requires that "some physicality accompany the alleged loss or damage[.]" *Cup Foods Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 22-cv-1620, 2023 WL 359602, at *4 (D. Minn. Jan. 23, 2023) (noting that even in asbestos contamination cases, plaintiffs still must allege harm caused by the presence of the asbestos fibers). Courts applying Minnesota law have "refused to adopt the position that 'direct physical loss or damage is established *whenever* property cannot be used for its intended purpose.'" *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005).

No case in this District, Minnesota state courts, or elsewhere in the Eighth Circuit has considered whether digital assets, such as crypto tokens, are covered by an insurance policy's provision for "direct physical loss" of property. In support of its argument, Homesite cites a case in which the United States District Court for the Northern District of California (applying California contract law) concluded that an insurance policy that covered "direct physical loss to property" did not include theft of cryptocurrency transferred out of a digital wallet by hackers. *Burt v. Travelers Com. Ins. Co.*, No. 22-cv-3157, 2022 WL 3445941 at *2-3 (N.D. Cal. Aug. 16, 2022). Within the Eighth Circuit, the United States District Court for the Western District of Missouri has held that an insurance policy covering "direct physical loss of or damage to" property did not include an employee's misappropriation of funds from a bank account. *Medavera, Inc. v. Travelers Cas. Ins. Co.*, No. 18-03174-CR-S-BP, 2019 WL 5686713 at *2 (W.D. Mo. May 31, 2019).

Homesite argues that crypto tokens cannot be the subject of "direct physical loss" because crypto tokens "exist exclusively in a virtual form." In response, the Rosenbergs

7

suggest that the language of the Policy is ambiguous. The "direct physical loss" requirement conflicts with several provisions that the Rosenbergs insist "contemplate . . . [coverage of] intangible data stored on paper or digital media."

Citing *UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, 836 F.Supp.2d 912, 918 (D. Minn. 2011), the Rosenbergs contend that the Court should consider that insurance contracts can "provide for broad general coverage and then whittle down the coverage through limitations and exclusions." However, *UnitedHealth Group* is distinguishable from the circumstances here. *UnitedHealth Group* considered an insurance contract that was negotiated "provision-by-provision" between a large corporation and several insurance companies. *UnitedHealth Grp. Inc.*, 836 F.Supp.2d at 915. The language from *UnitedHealth Group* on which the Rosenbergs rely referred to that contact specifically, not insurance contracts generally. *Id.* at 918. Here, nothing indicates that the Policy was the product of negotiation between the parties or deviated from Homesite's standard contract in any way.

The Rosenbergs' breach-of-contract claim relies on the Policy's phrase "direct physical loss" encompassing loss of digital property. In their attempt to meet their burden of proving coverage under the Policy, however, the Rosenbergs offer no legal authority in this District, the Eighth Circuit or any other federal court that suggests digital property is covered by a "direct physical loss" provision. The requirements for a "direct physical loss" are clear, some physicality must accompany the alleged property loss or damage. *See Cup Foods*, 2023 WL 359602 at *4; *Cedar Bluff*, 857 N.W.2d at 295.

Because Minnesota law is clear as to the requirements for coverage under a "direct physical loss" provision, the Rosenbergs' arguments about ambiguity are unavailing. The Court, therefore, applies the ordinary meaning to the phrase "direct physical loss."

The Rosenbergs lost crypto tokens—a purely digital asset. Nothing in the record suggests that a crypto token has any physicality that could satisfy the requirements of Minnesota law. *See Cedar Bluff*, 857 N.W.2d at 295. Homesite, therefore, did not violate the Policy. There is no other conclusion consistent with the law.

## II.

Homesite also argues that the Rosenbergs' statutory claim for bad-faith denial of coverage fails because the loss of the crypto tokens was not covered by the Policy. Even if the loss were covered by the Policy, Homesite contends, the Rosenbergs' claim still fails because the Rosenbergs do not allege bad faith as required by the statute. The Rosenbergs respond that this claim should not be dismissed because the statutory claim raises questions of fact.

To state a claim for bad-faith denial of insurance coverage under Minnesota Statute § 604.18, the insured party must establish two elements. First, the insured must establish that the insurance company lacked a reasonable basis for denying the insurance benefits. Second, the insured must establish that the insurer knew it lacked a reasonable basis for denying benefits or acted in reckless disregard of the lack of a reasonable basis. *Peterson v. W. Nat'l Mut. Ins. Co.*, 946 N.W.2d 903, 909-10 (Minn. 2020) (citing Minn. Stat. § 604.18, subd. 2(a)). A bad-faith claim fails when the insurance company is found not to have breached the insurance policy. *Wobig v. Safeco Ins. Co. of Illinois*, 40 F.4th 843, 848

(8th Cir. 2022) ("Having found the business use exclusion precludes coverage for the [plaintiffs'] claim, it necessarily follows that the [plaintiffs] have failed to establish the lack of a reasonable basis for the denial of insurance benefits.").

The bad-faith denial of insurance coverage claim requires a breach of the Policy. As addressed in Section I of this Order, the language of the Policy unambiguously excludes digital assets because the Policy requires some physicality to the loss. Because Homesite's refusal to cover the claim under a higher coverage limit was not a breach of the contract, the Rosenbergs cannot establish a bad-faith statutory claim.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Homesite Insurance Agency, Inc.'s motion for judgment on the pleadings, (Dkt. 26), is **GRANTED**.

2. The Second Amended Complaint, (Dkt. 11), is **DISMISSED WITH PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY

Dated: July 20, 2023                         s/Wilhelmina M. Wright
                                             Wilhelmina M. Wright
                                             United States District Judge